# In re Anderson David Justin SMALL, Respondent

File A22 525 186 - Oakdale

*Decided June 4, 2002*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

A misdemeanor offense of sexual abuse of a minor constitutes an aggravated felony under section 101(a)(43)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(A) (2000).

FOR RESPONDENT: Leo Jerome Lahey, Esquire, Lafayette, Louisiana

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Yon Alberdi, Assistant District Counsel

BEFORE: Board En Banc: SCIALABBA, Acting Chairman; DUNNE, Vice Chairman; SCHMIDT, HOLMES, HURWITZ, VILLAGELIU, COLE, GUENDELSBERGER, MILLER, BRENNAN, OSUNA, OHLSON, HESS, and PAULEY, Board Members. Concurring Opinion: GRANT, Board Member. Dissenting Opinions: FILPPU, Board Member, joined by MOSCATO, Board Member; ROSENBERG, Board Member, joined by ESPENOZA, Board Member.

PAULEY, Board Member:

On September 12, 2001, an Immigration Judge terminated proceedings based on his finding that the Immigration and Naturalization Service failed to sustain the charge of removability against the respondent under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2000). The Service timely appealed the Immigration Judge's decision. The appeal will be sustained and the record will be remanded to the Immigration Judge.

The respondent, a 43-year-old native and citizen of Trinidad and Tobago, was admitted to the United States in 1967 as a nonimmigrant attendant, servant, or personal employee of a representative, officer, or employee of an international organization. On April 24, 1979, he adjusted his status to that of a lawful permanent resident of the United States. He was convicted on August 22, 2000, in the County Court of the State of New York, County of Orange, of sexual abuse in the second degree, in violation of section 130.60(2) of the New York Penal Law, for which he was sentenced to serve 1 year in prison. The section of New York law under which he was convicted

states that a "person is guilty of sexual abuse in the second degree when he subjects another person to sexual contact and when such other person is . . . (2) [l]ess than fourteen years old." N.Y. Penal Law § 130.60 (McKinney 2000). The term "sexual contact" is defined as the "touching of the sexual or other intimate parts of a person . . . for the purpose of gratifying sexual desire of either party." N.Y. Penal Law § 130.00(3) (McKinney 2000). As the indictment in this case reveals, the victim was only 11 years old and was subjected to sexual contact by the respondent. An offense under this section of law is a class A misdemeanor, which is punishable by imprisonment for 1 year or less. N.Y. Penal Law § 70.15 (McKinney 2000).

On appeal, the Service argues that the Immigration Judge erred in finding that the respondent's conviction was not for an aggravated felony as defined in sections 101(a)(43)(A) and (F) of the Act, 8 U.S.C. §§ 1101(a)(43)(A) and (F) (2000). We agree. Although we concur with the Immigration Judge that the respondent's conviction was not for a crime of violence under section 101(a)(43)(F),[1] we conclude that the offense, although a misdemeanor, meets the definition of an "aggravated felony" in section 101(a)(43)(A) of the Act, as an offense of "sexual abuse of a minor."

This is not the first time we have addressed the issue whether the definition of an aggravated felony set forth in section 101(a)(43)(A) encompasses misdemeanor crimes of rape or sexual abuse. In *Matter of Crammond*, 23 I&N Dec. 9 (BIA 2001), a closely divided Board determined that misdemeanor offenses are not included in this section of the Act.[2] We subsequently vacated *Matter of Crammond* upon learning that the alien in that case had departed the United States prior to the issuance of our decision. *Matter of Crammond*, 23 I&N Dec. 179 (2001); *see also* 8 C.F.R. § 3.2(d) (2001).

At the time we initially considered *Crammond*, the question it presented was essentially one of first impression, as only one federal circuit court had decided the issue. In a decision handed down shortly before our opinion was published, the United States Court of Appeals for the Seventh Circuit issued a ruling that was at variance with the result reached in *Crammond*. *Guerrero-Perez v. INS*, 242 F.3d 727 (7th Cir. 2001).

---

[1] Because the respondent's crime is a misdemeanor, it does not come within the definition of a "crime of violence" in 18 U.S.C. § 16(b) (2000), which covers only felony offenses. Moreover, as the respondent's offense does not involve as an element the use of violent or destructive physical force, it also does not qualify as a crime of violence pursuant to 18 U.S.C. § 16(a) under the law of the United States Court of Appeals for the Fifth Circuit, in whose jurisdiction this case arises. *See United States v. Landeros-Gonzalez*, 262 F.3d 424, 426 (5th Cir. 2001).

[2] Four opinions were rendered, none of which commanded adherence by a majority of Board Members.

Since our initial decision in *Matter of Crammond*, the legal landscape relating to this question has significantly changed. After considering the issue anew in light of our opinion, the Seventh Circuit declined to modify its position and denied a petition for rehearing with a further opinion. *Guerrero-Perez v. INS*, 256 F.3d 546 (7th Cir. 2001). In addition, two other circuits, the Sixth and the Eleventh, employed similar reasoning in aligning themselves with the Seventh Circuit. *United States v. Gonzales-Vela*, 276 F.3d 763 (6th Cir. 2001); *United States v. Marin-Navarette*, 244 F.3d 1284 (11th Cir.), *cert. denied*, 122 S. Ct. 317 (2001). Most recently, the Ninth Circuit, citing *United States v. Marin-Navarette*, *supra*, determined that "an offense classified by state law as a misdemeanor can be an 'aggravated felony' . . . if the offense otherwise conforms to the federal definition [of that term] found in 8 U.S.C. § 1101(a)(43)," thus signaling its possible agreement with the result reached by its three sister circuits. *United States v. Robles-Rodriguez*, 281 F.3d 900, 903 (9th Cir. 2002). Moreover, to our knowledge no federal court has concluded that section 101(a)(43)(A) of the Act pertains only to felony offenses.

In light of these developments, we have reconsidered the issue and conclude that the prevailing appellate court view should be adopted for the reasons set forth in the above-cited opinions of the Sixth, Seventh, and Eleventh Circuits. We consider it appropriate at this juncture to accede to the weight of appellate court authority in the interest of uniform application of the immigration laws.

Accordingly, the Service's appeal will be sustained and the record will be remanded to the Immigration Judge.

**ORDER:** The appeal of the Immigration and Naturalization Service is sustained.

**FURTHER ORDER:** The decision of the Immigration Judge is vacated and the record is remanded for further proceedings consistent with the foregoing opinion.

*CONCURRING OPINION:* Edward R. Grant, Board Member

I concur fully in the result and reasoning of the majority opinion. I further incorporate by reference, in response to any suggestion that the Board has failed to engage in an independent analysis of the issue at stake, my separate opinion in *Matter of Crammond*, 23 I&N Dec. 9 (BIA), *vacated*, 23 I&N Dec. 179 (BIA 2001).

Respectfully submitted.

*DISSENTING OPINION:* Lauri Steven Filppu, Board Member, in which Anthony C. Moscato, Board Member, joined

I respectfully dissent.

There is substantial room for disagreement on the question whether a misdemeanor may constitute an "aggravated felony" under section 101(a)(43)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(A) (2000), as is reflected in the various opinions in *Matter of Crammond*, 23 I&N Dec. 9 (BIA), *vacated*, 23 I&N Dec. 179 (BIA 2001). We properly reexamine that question because *Crammond* no longer stands as precedent, because several courts of appeals have rejected the conclusion we reached in *Crammond*, and because we have a long-standing concern over nationwide uniformity in the application of the statute.

The majority accedes to circuit court precedent because of "the interest of uniform application of the immigration laws." *Matter of Small*, 23 I&N Dec. 448, 450 (BIA 2002). I fully respect that view in the present context, especially because the term "aggravated felony" appears in both the civil and criminal[1] provisions of the Act, arguably giving both this Board and the federal criminal courts independent grounds for resolving statutory ambiguities and leaving uncertain the question of which interpretation is owed deference. *Compare INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999) (explaining that courts owe deference to the Board's construction of ambiguous language in the statute administered by the Board), *with Adams Fruit Co. v. Barrett*, 494 U.S. 638 (1990) (explaining that deference does not extend to an agency's interpretation of a judicially enforceable portion of a statute).

Nonetheless, we face a question that is fundamentally an issue of civil immigration law, involving a term defined in the Immigration and Nationality Act and used extensively in its civil provisions, even if there is a criminal law overlap. Further, the issue does not involve a provision borrowed and cross-referenced from federal criminal law, where I believe we clearly owe deference to judicial rulings. *See Matter of Yanez*, 23 I&N Dec. 390 (BIA 2002) (deferring to circuit court precedent on the meaning of 18 U.S.C. § 924(c)(2) (2000)). In the end, then, I would not defer to the judicial construction of the term "aggravated felony" in circuits that have not spoken on the question at hand, unless I viewed the particular construction as reflecting the better interpretation of the statutory language.

The record reflects that the respondent committed a reprehensible crime. The state, however, convicted him only of a misdemeanor. For the reasons set forth at length in my concurring opinion in *Matter of Crammond*, *supra*,

---

[1] *See* section 276(b) of the Act, 8 U.S.C. § 1326(b) (2000) (criminal provisions referencing the term "aggravated felony").

I understand the term "aggravated felony" to refer to felony convictions, except where the literal language of a particular subparagraph of section 101(a)(43) of the Act otherwise specifies. The literal language of section 101(a)(43)(A) does not direct us to include misdemeanor convictions. Thus, the respondent's state misdemeanor conviction should not be treated as an aggravated felony.

*DISSENTING OPINION:* Lory Diana Rosenberg, Board Member, in which Cecelia M. Espenoza, Board Member, joined

Despite an "array of authority," I am convinced that the construction of the aggravated felony provision relied on by the majority to arrive at the result reached in this case is erroneous. *See United States v. Ibarra-Galindo*, 206 F.3d 1337, 1341 (9th Cir. 2000) (Canby, J., dissenting) (recognizing it to be a "daunting exercise to conclude that the majority has reached an incorrect result when six other circuits agree with it"), *cert. denied*, 531 U.S. 1102 (2001). To coin a phrase, "[t]his case is a perfect example why." *Id.*

The respondent was convicted of a state *misdemeanor*. *See* N.Y. Penal Law § 130.60(2) (McKinney 2000). There is no dispute that the respondent's conviction is *not* for a crime of violence as defined in section 101(a)(43)(F) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(F) (2000), which, in turn, relies on the definition of a "crime of violence" that Congress provided at 18 U.S.C. § 16 (2000). First, the use of physical force is not an element of the offense, as defined under 18 U.S.C. § 16(a); second, the offense is not a felony, as required under § 16(b). A conviction must be for a *felony* offense under the law of the jurisdiction in which the conviction occurs in order to constitute a crime of violence under § 16(b). *Francis v. Reno*, 269 F.3d 162, 169 (3d Cir. 2001) ("Labeling a particular offense as a misdemeanor should end the matter for the purposes of § 16(b)."). *But see United States v. Urias-Escobar*, 281 F.3d 165, 167-68 (5th Cir. 2002).

Therefore, the respondent has been convicted of an aggravated felony, as charged, *only* if he has been convicted of "murder, rape, or sexual abuse of a minor" under section 101(a)(43)(A) of the Act. Section 101(a)(43)(A) has not been expanded to encompass offenses for which a particular sentence is imposed. *Cf.* section 101(a)(43)(F) of the Act. Accordingly, the determination whether the respondent was convicted of an aggravated felony as charged depends on whether the term "aggravated felony" encompasses not just felony offenses, but also misdemeanor offenses. The majority concludes that it does. I disagree.

I continue to agree with the interpretation we reached in *Matter of Crammond*, 23 I&N Dec. 9 (BIA), *vacated*, 23 I&N Dec. 179 (BIA 2001). There, we recognized that in the absence of any qualifying language, the statute provided that a conviction for "murder, rape, or sexual abuse of a

minor" must be for a felony offense in order for the crime to be considered an aggravated felony under section 101(a)(43)(A) of the Act.[1]  This reasonable conclusion rests on two principal grounds.

First, the words "felony" and "aggravated" have a uniform and unequivocal meaning, both in common usage and under federal law.  In *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431-32 (1987), the Supreme Court recognized that "[w]ith regard to this very statutory scheme, we have considered ourselves bound to'"assume 'that the legislative purpose is expressed by the ordinary meaning of the words used.'"' *INS v. Phinpathya*, 464 U.S. 183, 189 (1984) (quoting *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982), in turn quoting *Richards v. United States*, 369 U.S. 1, 9 (1962))" (citations omitted).

As I noted in my concurring opinion in *Matter of Crammond*, *supra*, at 23 (Rosenberg, concurring), the commonly understood meaning of the word "felony" refers to a degree of crime that is especially serious and that does not include misdemeanors.  *See United States v. Graham*, 169 F.3d 787, 792-93 (3d Cir.), *cert. denied*, 528 U.S. 845 (1999) (acknowledging a uniformly accepted federal standard for differentiating between felonies and misdemeanors); *see also Pacheco v. INS*, 225 F.3d 148, 156 (2d Cir. 2000) (Straub, J., dissenting) ("[T]here can be little argument that the word 'felony' is commonly understood—and statutorily defined—to include crimes punishable by prison terms of *greater than* one year."), *cert. denied*, 533 U.S. 904 (2001); *Matter of Crammond*, *supra*, at 18 (Filppu, concurring) ("The plain or natural reading of the word 'felony' would not include misdemeanors.").  The term "felony" also is uniformly distinguished in the United States Sentencing Guidelines Manual § 2L1.2, cmt. n.1; in *Black's Law Dictionary* 633 (7th ed. 1999); and in *Webster's Third New Int'l Dictionary* 836 (1993).  In addition, the word "aggravated" has a commonly accepted meaning, typically modifying another word to describe a situation that is worse, enhanced, or more severe in some way.  *See, e.g.*, *Black's Law Dictionary*, *supra*, at 65 (defining the word "aggravated," when used to describe a crime, as "made worse or more serious by circumstances such as violence, the presence of a deadly weapon, or the intent to commit another crime"); *Webster's Third New Int'l Dictionary*, *supra*, at 41 (defining the verb to "aggravate" to mean "to make worse, more serious, or more severe").  Moreover, "it is quite clear that 'aggravated felony' defines a subset of the broader category 'felony.'"  *Pacheco v. INS*, *supra*, at 157 (Straub, J., dissenting) ("Common sense and standard English grammar dictate that when an adjective—such as 'aggravated'—modifies a noun—such as 'felony'—the combination of the terms delineates a subset of the noun.").

---

[1]  We vacated that decision on jurisdictional grounds upon learning that the respondent had departed the United States prior to our order, but we did not reconsider or vacate the decision on the merits.

It is well settled that "[w]here Congress uses terms that have accumulated settled meaning . . . a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329 (1981); *see also United States v. United States Gypsum Co.*, 438 U.S. 422, 437 (1978) ("Congress will be presumed to have legislated against the background of our traditional legal concepts . . . ."). The majority opinion offers no justification for concluding that, since our decision in *Matter of Crammond*, *supra*, the settled meaning of the terms has changed or a different meaning of the terms is warranted.

Second, the basis on which the majority rests its decision, coupled with our finding in *Matter of Crammond*, *supra*, at 11, leaves little doubt that the language used in section 101(a)(43)(A) is *not* plain. *Id.* ("We do not find a clear expression of congressional intent in the plain language of section 101(a)(43) of the Act."). At the very least, given our disparate interpretations in less than a 2-year period, the language appears to be ambiguous in the practical sense. *See Matter of Small*, 23 I&N Dec. 448, 451 (Filppu, dissenting) ("There is substantial room for disagreement on the question whether a misdemeanor may constitute an 'aggravated felony' under section 101(a)(43)(A) . . . .").

If the term "aggravated felony" is not to be interpreted literally, based on the plain and commonly understood meaning of the two words that make up the term, then the interpretation of such an apparently ambiguous term is subject to the controlling principles of statutory construction. The majority opinion neither mentions, nor observes, the foremost of the principles of construction applicable to immigration cases: "[W]e will not assume that Congress meant to trench on [the immigrant's] freedom beyond that which is required by the *narrowest of several possible meanings of the words used*." *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948) (emphasis added) (recognizing that "deportation is a drastic measure and at times the equivalent of banishment or exile" (citing *Delgadillo v. Carmichael*, 332 U.S. 388 (1947))).

The Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289 (2001), reflects that this rule maintains its currency today and applies even to interpretations of the plain language of the statute under the first prong of the test prescribed in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984). *See INS v. St. Cyr*, *supra*, at 320 (recognizing "'the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien'" (quoting *INS v. Cardoza-Fonseca*, *supra*, at 449)). Thus, we are obliged to opt for the more narrow reading, i.e., the one that will result in less harsh removal consequences. But the majority ignores this rule and does not even appear to consider it in reaching its conclusion that a misdemeanor under state law

should be considered a felony if the offense sounds like one that is articulated under the aggravated felony definition.

The majority invokes the decisions of the United States Courts of Appeals for the Sixth, Seventh, and Eleventh Circuits—none of which controls the result in the respondent's case—to buttress the result it reaches. It reiterates the holding of the Seventh Circuit, which had already been issued at the time we decided *Matter of Crammond*, *supra*, and notes that two other circuits have reached similar interpretations. It cites to the decision of the Ninth Circuit, which has not addressed this particular issue at all, and speculates that a state law misdemeanor might qualify as an aggravated felony in that jurisdiction. *United States v. Robles-Rodriguez*, 281 F.3d 900, 903 (9th Cir. 2002) (stating that "an offense classified by state law as a misdemeanor can be an 'aggravated felony' . . . *if* the offense otherwise conforms to the federal definition of 'aggravated felony'") (emphasis added)); *Matter of Small*, *supra*, at 450; *see also Wireko v. Reno*, 211 F.3d 833, 836 (4th Cir. 2000) (distinguishing section 101(a)(43)(B) of the Act from section 101(a)(43)(F), under which an offense with a sentence of at least 1 year is an aggravated felony).

The existing circuit court rulings that address section 101(a)(43)(A) of the Act are questionable and do not mandate our adoption of a nationwide rule. For example, in *Guerrero-Perez v. INS*, 242 F.3d 727, 736 (7th Cir.), *reh'g denied*, 256 F.3d 546 (7th Cir. 2001), the Seventh Circuit pointed to Congress' grouping of the crime of sexual abuse of a minor with the crimes of murder and rape in subparagraph (A) of section 101(a)(43) as "a fairly strong indication, albeit a limited one . . . , that Congress intended both misdemeanor and felony convictions for sexual abuse of a minor to be considered aggravated felonies." However, the grouping of sexual abuse of a minor with murder and rape, crimes almost universally classified as felonies, appears to provide greater support for the argument that Congress intended to cover only felony offenses involving sexual abuse of a minor.

Similarly, the reasoning of the Eleventh Circuit was that "[b]y adding sexual abuse of a minor to the definition of 'aggravated felony' without any reference to a term of imprisonment, Congress broadened the coverage of the 'aggravated felony' classification." *United States v. Marin-Navarette*, 244 F.3d 1284, 1286 (11th Cir.), *cert. denied*, 122 S. Ct. 317 (2001). The Seventh Circuit noted that "[t]here is no explicit provision . . . directing that the term 'aggravated felony' is limited only to felony crimes. We therefore are constrained to conclude that Congress, since it did not specifically articulate that aggravated felonies cannot be misdemeanors, intended to have the term aggravated felony apply to the broad range of crimes . . . ." *Guerrero-Perez v. INS*, *supra*, at 737 (citation omitted); *see also United States v. Gonzales-Vela*, 276 F.3d 763, 766-68 (6th Cir. 2001).

However, there is no basis for reading "including a misdemeanor" into the aggravated felony offenses defined in section 101(a)(43)(A) of the Act. When Congress wished to expand the scope of the aggravated felony classification to encompass offenses that would otherwise be considered misdemeanors, it did so expressly. *See, e.g.*, sections 101(a)(43)(F), (G) of the Act (imposing a sentence requirement of "at least one year" that encompasses misdemeanor offenses in which a sentence of 1 year may be imposed); *United States v. Graham*, *supra*, at 792 (finding that the term "includes *certain* misdemeanants who receive a sentence of one year" (emphasis added)). It is well settled that where language is included in one section of a provision and omitted in another section, the disparate inclusion or exclusion is presumed to be intentional. *INS v. Cardoza-Fonseca*, *supra*, at 432 (citing *Russello v. United States*, 464 U.S. 16, 23 (1983) (citing *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972))).

As the Third Circuit has noted, "An intent to broaden the coverage of the aggravated felony classification . . . is not necessarily an intent to include misdemeanors in that category." *United States v. Graham*, *supra*, at 792. Furthermore, we have only recently found it inappropriate to read into a statute additional provisions that Congress did not expressly articulate. *See Matter of Salazar*, 23 I&N Dec. 223, 227 (BIA 2002) (ruling that "under the plain language of section 101(a)(48)(A) of the Act, we have no authority to make such an exception" where Congress did not provide one). Given this authority, I conclude that each subparagraph of section 101(a)(43) of the Act must be read and interpreted according to its own terms.

I cannot agree that the appropriate exercise of the Board's authority in this case is to take a poll of circuit court decisions and reach a result based on one, two, or even several circuit court decisions. The Board has been recognized as having unique expertise in interpreting the complexities and substantive concerns attendant to the implementation of the immigration laws, and the meaning of the provision articulated by Congress in section 101(a)(43)(A) of the Act is no exception. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999). Nothing about this case suggests that we should defer to a particular decision of one or two circuit courts in exercising our authority, and to do so simply begs the question.

Our responsibility to construe the immigration law requires deliberation, analysis, and time to grapple with the legal issues that are posed in the context of factual circumstances presented in individual appeals. It is not merely a matter of tallying circuit law interpretations. And, admittedly, such deliberation takes longer than simply pronouncing a nationwide rule based on the most restrictive interpretation of the statutory language.

In my view, the majority has opted for a seemingly uniform result that completely skips over the critical legal issue relating to the scope of aggravated felony offenses. Even putting our interpretive responsibility

aside, I believe that the majority has reached an erroneous conclusion as a matter of law.  Therefore, I dissent.